# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **HOA VAN NGUYEN**, | Case No. 3:18-cv-655-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **SPECIALIZED LOAN SERVICING LLC; QUALITY LOAN SERVICE CORPORATION OF WASHINGTON; and THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWALT, INC., ALTERNATIVE LOAN TRUST 2006-OA6 MORTGAGE PASSTHROUGH CERTIFICATES, SERVICES 2006-OA6**, | |
| Defendants. | |

Jeffrey A. Long, OREGON CONSUMER LAW CENTER, 4248 Galewood St., Lake Oswego, OR 97035. Of Attorneys for Plaintiff.

David J. Elkanich and Nellie Q. Barnard, HOLLAND & KNIGHT LLP, 2300 US Bancorp Tower, 111 SW Fifth Avenue, Portland, OR 97204. Of Attorneys for Defendants SLS and BNYM.

John M. Thomas, MCCARTHY & HOLTHUS, 920 SW Third Avenue, First Floor, Portland, OR 97204. Of Attorneys for Defendant Quality.

**Michael H. Simon, District Judge.**

On March 6, 2018, Plaintiff, Hoa Van Nguyen, brought this lawsuit in Multnomah County Circuit Court against Defendants Specialized Loan Servicing LLC ("SLS"), Quality Loan Service Corporation of Washington ("Quality"), and The Bank of New York Mellon ("BNYM"). Plaintiff alleges various state statutory and common law claims arising from Defendants' threatened non-judicial foreclosure of Plaintiff's home. On Plaintiff's motion, the state court issued a preliminary injunction, enjoining Defendants from proceeding with their scheduled non-judicial foreclosure. Defendants timely removed the lawsuit to federal court. Defendant SLS and BNYM now move to dismiss for failure to state a claim and to dissolve the preliminary injunction. For the reasons that follow, the motion to dismiss is granted without prejudice, and Plaintiff has leave to file an amended complaint within two weeks. The motion to dissolve the preliminary injunction is denied without prejudice and with leave to renew, if appropriate, after Plaintiff timely files an amended complaint.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself

PAGE 2 – OPINION AND ORDER

effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epstein Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted)

## BACKGROUND

In 2005, Plaintiff borrowed approximately $416,000 from Aegis Wholesale Corporation ("Aegis") under a forty-year adjustable rate loan, secured by Plaintiff's home. The Deed of Trust ("DOT") identifies Aegis as the "lender," Land America Lawyers Title as the "Trustee," and Mortgage Electronic Registration Systems ("MERS") as the "beneficiary." SLS is the current servicer of Plaintiff's loan.

Multnomah County property records reflect a 2009 "Assignment of Deed of Trust" showing that MERS, as the purported "beneficiary," assigned to BNYM "all beneficial interest under" the DOT. The property records also reflect a May 5, 2017 "Corrective Assignment of Deed of Trust," showing that MERS, as the purported "designated nominee for Aegis," assigned

PAGE 3 – OPINION AND ORDER

the DOT to BNYM. The 2017 Corrective Assignment appears to "[c]orrect the assignor on the Assignment of Deed of Trust" recorded in 2009, and it specifically describes Aegis as the beneficiary of the DOT and MERS as Aegis's designated nominee. The property records further reflect an October 20, 2017 "Appointment of Successor Trustee," in which BNYM appointed Quality as successor Trustee of the DOT.

On or about October 24, 2017,[1] SLS recorded a Notice of Default and Election to Sell and sent to Plaintiff a Trustee's Notice of Sale, advising that Quality had scheduled a sale of Plaintiff's home on behalf of the beneficiary, BNYM. On November 22, 2017, Plaintiff's counsel sent Quality a letter requesting that the non-judicial sale be cancelled. Quality's counsel responded on December 8, 2017, denying the request.

On January 30, 2018, Plaintiff sent a Notice of Error to SLS for improperly initiating a non-judicial foreclosure, arguing that BNYM was not the lawful beneficiary under the DOT and could not, therefore, initiate a non-judicial foreclosure. On February 7, SLS sent a letter to Plaintiff acknowledging receipt of the Notice of Error, but adding that it was not sent to the "designated address for such inquiries." On February 16, Plaintiff submitted a loss mitigation application to SLS. On February 21, SLS sent a letter to Plaintiff responding to the loss mitigation application. In that letter, SLS stated that the non-judicial foreclosure sale was scheduled for March 8, 2018, and "[b]ecause the sale date is less than 37 days from the date we received your request, we are unable to cancel the sale or evaluate your request for a foreclosure prevention option."

---

[1] The Complaint and Plaintiff's response brief refer to this date as October 24, 2016. The recorded Notice, attached as an exhibit to the Complaint, shows clearly that the notice of sale was issued on October 24, 2017.

**DISCUSSION**

Plaintiff asserts six claims for relief against Defendants: declaratory judgment, breach of contract, intentional interference with economic relationship, violation of Oregon's Unfair Trade Practices Act, breach of the covenant of good faith and fair dealing, and violation of Or. Rev. Stat. ("ORS") § 86.748(1). In his response brief, Plaintiff abandoned his fourth claim, which alleged a violation of Oregon's Unfair Trade Practices Act.

**A. Declaratory Relief**

Plaintiff seeks declaratory relief under the Oregon Declaratory Judgment Act, which allows courts to "declare rights, status, and other legal relations, whether or not further relief is or could be claimed." ORS § 28.010. Specifically, Plaintiff asks the Court to declare that "MERS and the Defendants are not the 'beneficiary' of the loan and therefore did not have the power or authority to appoint a substitute trustee, assign the [DOT], or to conduct a non-judicial foreclosure."

Defendants characterize Plaintiff's dispute as resulting from a "confusion" over who is the proper beneficiary. Defendants identify several recorded documents that state that BNYM is the beneficiary. Plaintiff acknowledges the existence of these documents, but disputes BNYM's status as the lawful beneficiary. Plaintiff contends that the original beneficiary of the DOT was Aegis (the original lender) and that there is no recorded assignment of the Note or DOT *by Aegis* to BNYM—there are only recorded assignments of the DOT *by MERS* to BNYM. Thus, Plaintiff argues, BNYM is not the lawful beneficiary under the DOT and does not have the authority to initiate a non-judicial foreclosure of Plaintiff's home under the trust deed.

Under Oregon law, MERS "may not be a trust deed's 'beneficiary,' unless it is a lender's successor in interest," even if MERS is identified as a beneficiary in a deed of trust. *Brandrup v. ReconTrust Co.*, 353 Or. 668, 689 (2013). In *Iron Hawk v. Bank2*, this Court held that a

defendant bank could not "claim beneficiary status arising from [a] purported assignment from MERS . . . because at the time MERS executed the assignment, it was not the beneficiary." 2016 WL 3391252 at *5 (D. Or. June 13, 2016). Thus, for the reasons stated in *Iron Hawk*, the 2009 Assignment of Deed of Trust was ineffective. In that assignment, MERS purported to assign "its" beneficial interest of the DOT to BNYM *as beneficiary*. Because MERS was not a beneficiary, it had no beneficial interest in the DOT to assign.

In the 2017 Corrective Assignment of Deed of Trust, however, MERS acted "as designated nominee for Aegis" and acknowledged that Aegis, not MERS, was the actual beneficiary whose DOT interests were being assigned to BNYM. In *Brandrup*, the Oregon Supreme Court explained that whether MERS can act as an agent for the original lender turns on whether the entity holding the relevant interest has "conferred authority on MERS to act on their behalves in the necessary respects." 353 Or. at 699. At the time that the 2017 Corrective Assignment was made, Aegis held the beneficial interest under the DOT. In the 2017 Corrective Assignment, MERS purported to act on Aegis's behalf as Aegis's agent, and Plaintiff offers no allegation in its complaint that MERS was not in fact authorized to do so in that agency capacity.

This Court has previously described the relationship between MERS and the original lender or its successors as that of principal-agent. *See James v. ReconTrust Co.*, 845 F. Supp. 2d 1145, 1165 (D. Or. Feb. 29, 2012) ("MERS is nothing more than an agent (or nominee) for the real beneficiary, which is the lender or its successor") (*abrogated in part on other grounds by Brandrup*, 353 Or. at 669) Thus, MERS, acting as agent for Aegis in the 2017 Corrective Assignment of Trust, appears to have legally assigned Aegis's beneficial interest in the DOT to BNYM. Having been lawfully assigned the DOT, BNYM was then in a position lawfully to appoint Quality as successor trustee. Thus, Quality may lawfully initiate a non-judicial

PAGE 6 – OPINION AND ORDER

foreclosure. Accordingly, Plaintiff has failed to allege facts that plausibly support his requested declaratory relief. The Court dismisses Plaintiff's first claim against SLS and BNYM.

**B. Breach of Contract**

Plaintiff also alleges that Defendants breached the terms of the DOT by initiating a non-judicial foreclosure in violation of Oregon law, under which only beneficiaries of a DOT may initiate a non-judicial foreclosure. As explained above, however, Plaintiff has not alleged sufficient facts to give rise to a plausible claim that BNYM is not the beneficiary of the DOT, having received that beneficial interest by assignment from the original beneficiary acting through its agent (MERS). The 2017 Corrective Assignment appears to show that BNYM is the lawful beneficiary. Thus, BNYM is entitled to pursue a non-judicial foreclosure and did not breach the DOT. The Court dismisses Plaintiff's second claim against SLS and BNYM.

**C. Intentional Interference with an Economic Relationship**

Plaintiff further alleges that Defendants interfered with his economic relationship with the actual and lawful beneficiary of the DOT by improperly denying Plaintiff's application for a loan modification and other loss-mitigation programs, for which Plaintiff alleges he was eligible. To state a claim for intentional interference with an economic relationship ("IIER"), a plaintiff must allege:

> (1) the existence of a professional or business relationship (which could include, e.g., a contract or a prospective economic advantage), (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages.

*McGanty v. Staudenraus*, 321 Or. 532, 535 (1995). The relevant economic relationship is Plaintiff's mortgage contract, consisting of the Note and DOT. Defendants BNYM and Quality, as the beneficiary and trustee of the DOT, respectively, are parties to that economic relationship.

PAGE 7 – OPINION AND ORDER

They are not "third parties" and, thus, cannot be held liable for IIER on the facts alleged in the complaint.

Defendants also argue that SLS cannot be held liable for IIER because SLS acted as an agent for BNYM, which was a party to the economic relationship. Agents whose principals are parties to an economic relationship are third parties to those relationships only when their conduct exceeds the scope of their agency. *Mannex Corp. v. Bruns*, 250 Or. App. 50, 54 (2012). "[S]o long as the [agent]'s conduct is within the scope of his or her authority and is undertaken at least in part to further the best interests of the [principal]," the agent cannot be held liable for IIER. *Id.* The basis of SLS's interference is SLS's alleged mishandling of Plaintiff's loss-mitigation applications, which Plaintiff asserts resulted in Plaintiff being denied the opportunity to participate in certain foreclosure-prevention programs. The Complaint contains allegations that SLS's actions exceeded the scope of its agency, did not benefit the DOT beneficiary, and therefore were taken as a third party to the relationship.

Those allegations, however, presume that the beneficiary of the DOT—SLS's principal—is some entity other than BNYM. Plaintiff alleges that SLS and BNYM acted in concert: "[BNYM] and SLS mishandled Plaintiff's modification applications, asked for duplicative materials, ignored materials received, and ultimately failed to allow for proper considerations for" loss-mitigation programs. In the 2017 Corrective Assignment, SLS appears to have appropriately acted within its capacity and authority as BNYM's agent and is thus not a third party to the economic relationship. Because SLS and BNYM are parties to the relevant economic relationship, and not third parties, the Court dismisses Plaintiff's third claim, which is asserted only against SLS and BNYM.

**D. Breach of the Implied Covenant of Good Faith and Fair Dealing**

Plaintiff alleges that Defendants breached their implied contractual duty of good faith and fair dealing by failing to undertake a reasonable review of Plaintiff's mortgage modification application and by initiating an unlawful non-judicial foreclosure. Under Oregon law, every contract contains an implied duty of good faith and fair dealing. *Klamath Off-Project Water Users, Inc. v. Pacificorp*, 237 Or.App. 434, 445 (2010). To state a claim for the breach of these implied duties, therefore, a contract must exist between the parties. *Rapacki v. Chase Home Fin. LLC*, 797 F. Supp. 2d 1085, 1091 (D. Or. 2011). SLS, as a loan servicer, is not a party to the DOT or Note. *See Nguyen v. Madison Mgmt. Servs., LLC*, 2016 WL 4708535, at *8 (D. Or. Sept. 7, 2016) (dismissing a claim for breach of good faith and fair dealing against a loan servicer because "[a] loan servicer . . . is not a party to a deed of trust."). Because Plaintiff has not alleged that any other contract exists between SLS and Plaintiff, SLS is not a proper defendant for this claim.

As to the other Defendants, the duty of good faith and fair dealing "may be implied as to a disputed issue only if the parties have not agreed to an express term that governs that issue." *Oregon Univ. Sys. v. Oregon Pub. Employees Union, Local 503*, 185 Or.App. 506, 511 (2002) (emphasis added). In this case, the DOT expressly provides for foreclosure upon Plaintiff's failure to cure his default. ECF 1-1 at 25 ("If the default is not cured on or before the date specified in the notice, Lender . . . may invoke the power of sale."). Plaintiff does not deny that he was in default or otherwise argue that this term should not govern this situation.

Instead, Plaintiff argues, Defendants have violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et. seq.*, and that such a statutory violation can constitute a breach of good faith in contractual relationships. Plaintiff, however, does not assert a claim for violation of RESPA. Nor does Plaintiff expressly allege how Defendants may have violated

PAGE 9 – OPINION AND ORDER

RESPA or what provisions of that law Defendants may have violated. Plaintiff alleges only that Defendants improperly denied Plaintiff's request for mortgage assistance, thereby unlawfully pursuing non-judicial foreclosure while Plaintiff's application was pending. Because Defendant's decision to invoke the power of sale appears to be governed by, and in compliance with, an express term in the DOT, Plaintiff has not stated a claim for the implied breach of the duty of good faith and fair dealing. The Court dismisses Plaintiff's fifth claim against SLS and BNYM.

### E.  ORS § 86.748 and Request for Judicial Notice

Finally, Plaintiff alleges that Defendants failed to comply with ORS § 86.748(2) by failing to record an affidavit in Multnomah County that states that they complied with the requirements of ORS § 86.748(1) at least five days before the scheduled sale. Defendants request judicial notice that a Certificate of Compliance was recorded in Multnomah County on July 24, 2017.  "[D]ocuments in county land records are properly subject to judicial notice," *Durham v. Bank of New York Mellon*, 2012 WL 2529188 at *1 (D. Or. June 28, 2012). The Court takes notice of the Certificate of Compliance, which shows that Defendants complied with ORS § 86.748(2). In his response, Plaintiff appears to argue that  Defendants nevertheless failed to comply with ORS § 86.748(1), which requires that Defendants mail their determination of Plaintiff's eligibility for a foreclosure avoidance program within 10 days of making that determination. This allegation, however, was not alleged in Plaintiff's complaint, which expressly identifies Plaintiff's claim as alleging a failure to comply with paragraph two of the relevant statute. The Court dismisses Plaintiff's sixth claim, which is asserted only against SLS and BNYM.

## CONCLUSION

Defendants SLS and BNYM's Motion to Dismiss and to Dissolve the Preliminary Injunction (ECF 14) is GRANTED in part and DENIED in part. Plaintiff's Complaint is

PAGE 10 – OPINION AND ORDER

dismissed against SLS and BNYM without prejudice. If Plaintiff believes he can cure the deficiencies noted in this Opinion and Order, he may file an amended complaint within 14 days from the date of this Opinion and Order. Defendants SLS and BNYM's Motion to Dissolve the Preliminary Injunction is denied without prejudice and with leave to renew, if appropriate, after Plaintiff timely files an amended complaint.

**IT IS SO ORDERED**.

DATED this 24th day of August, 2018.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge